UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRICKLAYERS & TROWEL TRADES
INTERNATIONAL PENSION FUND,

        Plaintiff,

  v.

AVALANCHE CONSTRUCTION GROUP,
INC.,

        Defendant.

Case No. 23-cv-1784 (JMC)

## MEMORANDUM OPINION

Plaintiff Bricklayers & Trowel Trades International Pension Fund (Bricklayers) moves for default judgment against Defendant Avalanche Construction Group, Inc. (Avalanche), seeking $77,001.80 for unpaid contributions due under a collective bargaining agreement, damages, and fees. For the reasons set out below, the Court will **GRANT** Plaintiff's motion for default judgment, ECF 9.[1]

**I.    BACKGROUND**

Bricklayers is an employee pension benefit plan organized under the Employee Retirement Income Security Act (ERISA) that provides retirement and related benefits to employees in the construction industry. ECF 1 ¶ 1; ECF 9-3 at 3–4 ¶ 3. Employers who sign collective bargaining agreements (CBAs) with the International Union of Bricklayers and Allied Craftworkers (the

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

Union) must pay contributions to the pension fund, which finances these benefits. ECF 9-1 at 6; ECF 9-3 at 3–4 ¶¶ 3, 7. Avalanche is one such employer. ECF 1 ¶¶ 6–7.

Under its CBA, Avalanche was obligated to submit monthly remittance reports and pay monthly contributions to Bricklayers for each hour of covered work it performed. ECF 9-3 at 3–4 ¶¶ 7–8. From January 2022 through January 2023, Avalanche reported but failed to pay contributions to Bricklayers as required. *Id.* at 6–7 ¶¶ 10–11. From February 2023 through August 2024, Avalanche failed to report and pay all amounts owed to Bricklayers under the CBA. *Id.* at 7–8 ¶ 12. Pursuant to the CBA, once contributions are delinquent, Avalanche is required to pay—in addition to the delinquent contributions themselves—(1) interest on the unpaid contributions at a rate of 15 percent per year from the due date of each monthly payment; plus (2) liquidated damages, calculated at the rate of 20 percent of the delinquent contributions; plus (3) attorneys' fees incurred recovering the delinquent amounts. *Id.* ¶¶ 11–15. Bricklayers is entitled to enforce the terms of the CBA pursuant to Sections 502(a) and 515 of ERISA. 29 U.S.C. §§ 1132(g), 1145.

The docket reflects that Bricklayers properly served Avalanche on November 7, 2023. ECF 6.[2] Avalanche did not respond. On July 3, 2024, Bricklayers filed a request for entry of default, ECF 7, and served a copy of that request on Avalanche, ECF 7-2. The Clerk of the Court entered default five days later. ECF 8. Despite being aware of this suit, *see* ECF 9-1 at 5, Avalanche did not move to set aside the Clerk's entry of default or otherwise respond.

---

[2] On October 5, 2023, Bricklayers filed a Motion for Service by Alternative Means. ECF 4. Despite Bricklayers' diligent efforts, its process server was unable to serve the summons and complaint on Avalanche at its registered address. *Id.* A defendant may be served with a summons and complaint by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Because Avalanche is incorporated in New York, the company may be served in accordance with New York law. *See* ECF 4. On October 10, 2023, this Court granted Bricklayers' Motion for Service by Alternative Means. ECF 5. In its Order, the Court instructed Bricklayers to "post a copy of the Summons and Complaint at [Avalanche]'s address on record with the New York Secretary of State" and to "mail a copy of the Summons and Complaint" to this address, pursuant to New York law. *Id.* Bricklayers did so. ECF 6.

## II.     LEGAL STANDARD

"To warrant a default judgment, the defendant must be considered a totally unresponsive party, and its default plainly willful, reflected by its failure to respond to the summons and complaint, the entry of a default, and the motion for a default judgment." *Teamsters Local 639-Emps. Health Trust v. Boiler & Furnace Cleaners, Inc.*, 571 F. Supp. 2d 101, 107 (D.D.C. 2008). Generally, "[in] the absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008). The trial court has the discretion to determine whether a default judgment is appropriate. *See Hanley-Wood, LLC v. Hanley Wood, LLC*, 783 F. Supp. 2d 147, 150 (D.D.C. 2011) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). In doing so, the court must "make an independent determination of the sum to be awarded unless the amount of damages is certain." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002).

"A defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30. When a defendant does not contest its liability, a court need only determine whether the allegations in the complaint are well-pled. *See Fanning v. AMF Mech. Crop.*, 326 F.R.D. 11, 14 (D.D.C. 2018).

For the reasons set out below, the Court finds that Bricklayers' complaint alleges sufficient facts to establish liability and that Bricklayers' request for unpaid contributions, interest, and liquidated damages is reasonable under ERISA.

## III.  ANALYSIS

### A. Liability

Because Avalanche did not respond to either the complaint or the motion for default judgment, it has failed to contest its liability in this suit. *See R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30. The Court need only determine whether the allegations in the complaint are well-pled. *See Fanning*, 326 F.R.D. at 14. ERISA requires employers to contribute to pension plans consistent with their collective bargaining agreements. 29 U.S.C. § 1145. Bricklayers alleged—and provided documentation demonstrating—that Avalanche signed the CBA, that the CBA required contributions based on the number of hours of work that its employees performed, and that Avalanche failed to make those contributions between January 2022 and January 2023 and between February 2023 and August 2024. *See* ECF 1 ¶¶ 6–13; ECF 9-3. Bricklayers has established that Avalanche is liable, and entry of default judgment is therefore warranted. *See, e.g.*, *Bricklayers & Trowel Trades Int'l Pension Fund v. NY Big Apple Constr. Corp.*, No. 19-CV-03552, 2020 WL 6683061, at *3 (D.D.C. Nov. 12, 2020) (granting default judgment based on unpaid contributions under CBA in ERISA case). The Court now turns to the issue of damages.

### B. Damages

When an employer fails to make contributions in accordance with the terms and agreements of a collective bargain agreement, the fiduciary may bring an action and obtain a mandatory award for the plan consisting of (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the plan in an amount not in excess of twenty percent; (4) reasonable attorneys' fees and costs of the action, to be paid by the defendant; and (5) such other legal or equitable relief

as the court deems appropriate. *See* 29 U.S.C. § 1132(g)(2). A court "may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment" under ERISA. *Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 69 (D.D.C. 2002) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

"[U]npaid contributions, interest, and liquidated damages are considered 'sums certain,' because their calculations are mandated by ERISA and party agreements," and are therefore appropriate for default judgment. *Boland v. Yoccabel Constr. Co.*, 293 F.R.D. 13, 18 (D.D.C. 2013). Nevertheless, Bricklayers must prove these damages to a reasonable certainty. *Compare Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 162 (D.D.C. 2009) (awarding damages where plaintiffs' estimate was "as accurate as possible under the circumstances"), *and Int'l Painters & Allied Trades Indus. Pension Fund v. LaSalle Glass & Mirror Co.*, 267 F.R.D. 430, 433 (D.D.C. 2010) (accepting plaintiffs' calculation of damages as reasonable), *with Int'l Painters & Allied Trades Indus. Pension Fund v. Executive Painting, Inc.*, 719 F. Supp. 2d 45, 51 (D.D.C. 2010) (determining that plaintiffs did not calculate damages with reasonable certainty), *and Gillespie v. Capitol Reprographics, LLC*, 573 F. Supp. 2d 80, 87 (D.D.C. 2008) (requiring additional proof to validate plaintiff's claim for monetary damages).

The Court finds that Bricklayers is entitled to judgment against Avalanche for $77,001.81 in damages, which includes $52,296.25 in unpaid contributions during the period from January 2022 to January 2023, and the period from February 2023 to August 2024; $7,970.83 in interest owed on these unpaid contributions; $7,211.67 in liquidated damages; and $9,523 in attorneys' fees.

*1. Contributions*

Avalanche's delinquent contributions are calculated by multiplying the number of hours worked in a given month by the applicable hourly rate set by the CBA. *See* ECF 9-1 at 10; *NY Big Apple Constr. Corp.*, 2020 WL 6683061, at *3. As documented by Bricklayers, Avalanche reported but failed to pay a total of $25,771.51 in contributions for work performed between January 2022 and January 2023. ECF 9-2; ECF 9-3 at 6–7 ¶ 11. Avalanche also failed to pay $26,524.74 in contributions for work performed between February 2023 and August 2024. ECF 9-2; ECF 9-3 at 7–8 ¶ 12. Thus, Avalanche owes Bricklayers a total of $52,296.25 in unpaid contributions. ECF 9-2. Bricklayers calculated the precise amount of unpaid contributions based on Avalanche's monthly remittance reports, which identify the number of hours worked by its employees under the CBA. ECF 9-3 at 6–7 ¶¶ 10–11.[3] Accordingly, Bricklayers has proved the amount of unpaid contributions to a "reasonable certainty." *See, e.g.*, *Extreme Granite, Inc.*, 671 F. Supp. 2d at 162; *LaSalle Glass & Mirror Co.*, 267 F.R.D. at 433.

*2. Interest*

Bricklayers may also collect interest on the outstanding contributions at the rate determined by the CBA: 15 percent per year from the due date of each monthly payment. 29 U.S.C. § 1132(g)(2); ECF 9-3 at 6–7 ¶¶ 11–12. Bricklayers has provided declarations and other documentation demonstrating that Avalanche owes a grand total of $7,970.88 in interest on the $52,296.25 in unpaid contributions: $5,593.36 on the unpaid contributions for work performed between January 2022 and January 2023, and an additional $2,377.52 on unpaid contributions for

---

[3] Initially, Avalanche failed to submit the required monthly remittance reports between February 2023 and August 2024. ECF 9-3 ¶ 12. After Bricklayers filed this suit, however, Avalanche submitted these reports for the period between February 2023 and August 2024. *Id.*

work between February 2023 and August 2024. ECF 9-2 (summarizing damages calculations); ECF 9-3 at 6–7 ¶¶ 11–12 (declaration by Bricklayers' executive director).

### 3. *Liquidated Damages*

Moreover, under the CBA and ERISA, Bricklayers is entitled to liquidated damages, calculated at the rate of 20 percent of the delinquent contributions. ECF 9-3 at 6–7 ¶¶ 11–12. Bricklayers has provided declarations demonstrating it is entitled to a total of $7,211.67 in liquidated damages: $3,577.30 on the unpaid contributions owed for work performed between January 2022 and January 2023, and an additional $3,634.37 on the unpaid contributions owed for work performed between February 2023 and August 2024. ECF 9-2; ECF 9-3 at 6–7 ¶¶ 11–12.

### C. Attorneys' Fees and Costs

Bricklayers requests $9,523 in attorneys' fees and related legal costs. ECF 9-2. Turning first to fees: unlike unpaid contributions, interest, and liquidated damages, attorneys' fees do not qualify as "sums certain"—rather, the court must ascertain whether the requested fees are reasonable. *See Shelton v. District Cooling, LLC*, No. 22-CV-3333, 2024 WL 4103707, at *2 (D.D.C. Sept. 6, 2024) (citing *Combs v. Coal & Mineral Mgmt. Servs., Inc.*, 105 F.R.D. 472, 475 (D.D.C. 1984)). Bricklayers' counsel provided documentation showing 23.3 hours of work at an hourly rate of $340 until March 31, 2024, and $355 thereafter, for a total of $8,006 in attorneys' fees. ECF 9-2; ECF 9-3 at 33–34, 36–39. After reviewing the complaint and the pleadings filed in this case, as well as counsel's declaration, ECF 9-3 at 33–34, the Court finds that 23.3 hours is a reasonable amount of time for the work performed in this litigation. The time records submitted in support of Bricklayers' fee request do not reveal excessive staffing or unnecessary duplication and reflect the exercise of counsel's billing judgment. *See id.* at 36–39. Two experienced attorneys worked on this case, *see id.* at 33 (attorneys have, respectively, 41 years and 10 years legal

experience), and Bricklayers' declaration states that they charged hourly rates "substantially below" both the market rate and the rates established by the *Laffey* matrix, *id.* at 34; *see Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015) ("The *Laffey* Matrix sets out a general guideline for awarding attorneys' fees based on experience."). Because counsel charged below-market rates, and the time for which counsel seeks compensation is appropriate, the Court finds Bricklayers' request for attorneys' fees is reasonable. *See Bricklayers & Trowel Trades Int'l Pension Fund v. KAFKA Constr. Inc.*, 273 F. Supp. 3d 177, 182 (D.D.C. 2017) (finding request for attorneys' fees to be reasonable where firm charged below-market rates); *see also Boland v. Smith & Rogers Constr. Ltd.*, 201 F. Supp. 3d 144, 149 (D.D.C. 2016) (determining that Plaintiffs' request for $9,258 in attorneys' fees for 34.1 hours of work was reasonable, where attorneys charged market rates).

Bricklayers also seeks reimbursement for out-of-pocket costs expended for this litigation. It included bills for $1,517 incurred for serving process and filing the complaint. ECF 9-2; ECF 9-3 at 34, 41, 44–47. Those are necessary and reasonable expenses for litigation and Bricklayers is entitled to reimbursement.

Accordingly, the Court awards Bricklayers $8,006 in attorneys' fees and $1,517 in costs, for a total of $9,523.

\*   \*   \*

For the foregoing reasons, the Plaintiff's motion for default judgment, ECF 9, is **GRANTED**. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

Date: November 22, 2024

_____
JIA M. COBB
United States District Judge